Good afternoon. May it please the Court, my name is Rebecca Hufstadter from Legal Services of New Jersey, and I represent Petitioner Ricardo Gayle. Could I please reserve three minutes for rebuttal? Absolutely. Three minutes is yours. Thank you, Your Honor. Mr. Gayle came to the United States as a lawful permanent resident when he was a child, and he is seeking the opportunity to apply for discretionary relief from removal. In this case, the BIA held that Mr. Gayle's statute of conviction was broader than the federal generic definition of a drug trafficking aggravated felony, but found the statute was divisible and applied the modified categorical approach. That is the decision that this Court is reviewing here, and it should reject the government's 11th hour attempt to introduce a new argument that it waived below. Turning to the issue of divisibility, the BIA misapplied the three tools set forth in Mathis in determining that the identity of the controlled substance involved is an element of the New Jersey 2C35-5B1. So how should we think about that dichotomy? This is not necessarily intuitive, and it's like every time we get one of these cases, you have to learn it all over again, because my mind tells me, you don't need this, and then the cases come back, and I do. So the dichotomy between means and elements. Right. So elements are the constituent parts of a criminal offense that need to be proven beyond a reasonable doubt and found unanimously by a jury. And the Court should reject the BIA's attempt to distinguish between elements under state law versus elements under federal law. There's only one definition of an element, and it's a question ultimately of state law. What are the elements of a particular offense? And here, the state case law is clear. But everything you have cited is pre-apprendi. Can you account for that? And also, can you tell me what, in your estimation, are the elements of this A1B1 offense? List for me what you think the elements are. Sure. So when I answer the second question first, I think the elements of A1B1 are possession, and then a qualifying mens rea with intent to distribute, manufacture, et cetera. A controlled dangerous substance listed in B1 in an amount over five ounces. And those are the elements of B1. And I think Torres and Edwards, although it relates to a different statute, are consistent with apprendi. Torres says that elements need to be proven beyond a reasonable doubt. And it holds that to the degree that either quantity or, in that case, quality, and then Edwards talked about identity of the controlled substance, to the degree that they affect the punishment. They are elements that need to be proven to a jury beyond a reasonable doubt. But beyond that, it's not necessary for the jury to unanimously find which substance, or I think actually the quantity is a helpful comparison. So the jury needs to find beyond a reasonable doubt that it's over five ounces to fall under B1. Can they aggregate? If you have some jurors saying heroin and some saying cocaine, can they aggregate three ounces of one and two ounces of the other? There is a recent New Jersey Superior Court case that says no, that based on the language of the statute, it needs to be a single substance, although multiple instances of possession can be aggregated. So then how is that a means and not a theory of liability? It's – I don't think that – that was based on the rule of lenity and the language of the statute, but that decision, Rivestineo, doesn't make clear whether substance is – Well, what's your position on whether or not it can be aggregated? New Jersey – As a means. New Jersey courts have said that it can't be aggregated, but I don't think that really answers clearly the means versus elements question, because the question is really whether the jury needs to find beyond a reasonable doubt whether – which substance was involved. So while it can't aggregate, in the Gibson case, for example, the jury didn't specify. So the indictment said heroin and or cocaine, the jury verdict form said heroin and or cocaine, and the jury said convict, and the appellate court upheld that conviction. So that's an example where, although perhaps not aggregating, there may have been a lot of – plenty of drugs of either kind, but the jury didn't have to find it beyond a reasonable doubt. Right, and I guess what I'm trying to understand is, let's say I'm in a car with my fellow panelists here, and there's a package of cocaine that's 2.5 ounces and a package of heroin that's 2.5 ounces. Six jurors say, you know, the cocaine was his, but the heroin is mine. Six jurors say the other way. So you've got 12 jurors who say that it is a controlled substance, and you can aggregate those to 5 ounces. Is that a conviction under your theory? So I don't think that that would be a conviction under my reading of New Jersey law. How is that not an element? Because the New Jersey courts just treat this aggregation question as separate from the elements question. The courts have just held that you can't aggregate in that way. But I think as a counterexample, if each package were 5 ounces, then yes, the jury could convict, even if there was disagreement about who possessed the cocaine and who possessed the heroin. So if it's an element, that would be an acquittal. The defendant would not be liable for a 20-year sentence. But under that example, even though there's no agreement that I've actually possessed 5 ounces as to one substance, under your theory, that would be a conviction. Whereas under elements, that would be an acquittal. So, yeah, under my theory, it would be a conviction for the first-degree offense. Under my hypothetical and under your hypothetical, it would be a conviction for the lower grade with the lesser, based on the lesser quantity, because it's still illegal to – I'm going with your hypothetical. I'm sorry. Yeah, I'm going with your hypothetical. So the packages are 5 ounces and 5 ounces. Six jurors say I have coke. Six jurors say I have heroin. If it's an element, that would be an acquittal. But if it's a means, that's a conviction. Correct. Correct. And that's your belief as to what the law is? Yes. I think that's what Gibson says. That was basically the scenario in Gibson, as well as some of the other unpublished decisions that we cite, like Larkin. Just to tease in, are we looking at date of offense or are we looking at date of conviction? In terms of the – Categorical matching. Yeah. Martina says the date of conviction. Okay. And then we have – and it talks about conviction, but then we have this other case, Brown, from last year that's not an INA case. It's an ACCA case that has Federal Savings Clause component to it. But it seems to say, no, actually, we care about the date of offense. And so should we care about – does that hold any sway, or are we just like, look, Martina's kind of obliquely – I don't know it has a line that says we compare the date of conviction. It functionally compares date of conviction, I think. But I don't know where that line is. So are we just locked into Martina's and should not think too much more about this? I think it does say that, and it cites Doe from the Second Circuit that says that. I think that there could be situations where it would be appropriate to look at the date of the arrest for the purposes of the state statute. So, you know, of course, if the state broadened the statute between the date of the arrest and the date of conviction, the person wasn't then convicted under the broader statute. But looked into this a little bit in our read of New Jersey law is that if there's an ameliorative change, then the defendant would not be convicted under the prior statute if there had been a narrowing of the New Jersey statute after the arrest but before the conviction. So I think, at least in this case, it makes sense to compare the schedules at the date of conviction. And that is my read of Martina's. We could spend a long time on categorical matching and divisibility. But the government comes with this other argument of save yourself the time and effort. And it basically says, you know, we recognize that it might not have been exactly what the BIA said or really part of the BIA's analysis at all, you might say. But we've got this other legal argument, and the legal argument is that the schedules match or at least should be read to match. And because of that, we've got this case that talks about when we aren't bound by the BIA standard, this case Vuramindi. And the question is, is this an instance where we don't need to remand but can just say, for purposes of a legal question, we can make that determination? So I guess I bake two things in. Can we actually get there? And then if we do, why isn't looking at the pegging of New Jersey statute to the federal statute good enough? Right. So I think Vuramindi is distinguishable for at least three different reasons. First, Vuramindi doesn't address waiver. That's a situation where the party below did raise the issue, but the BIA didn't reach it. So that's like a Chenery kind of remand issue, but not a waiver issue. And, you know, looking at, for example, Barnaby school directors relating to the purposes of the waiver doctrine, those purposes are really apparent here. The purpose of the doctrine is judicial economy. We're, you know, looking at new issues in 28J letters before this court and to prevent unfair surprise. And, you know, candidly, Your Honor, we were surprised by the argument in the response brief. It's a new argument that hadn't been raised below.  And at minimum, if it wasn't waived, then remand would be appropriate to allow additional arguments on overbreath. Because as we, you know, raise in our reply brief, if the court in Martinez was incorrect that the statutes were, that the New Jersey statute was overbroad in 2017, then at least with regard to IO flu pain, we submit that there are other forms of overbreath, but those really need to be fleshed out further on remand. There are some factual issues, potential realistic probability doctrine. We could potentially provide expert testimony since the issues are quite complex. So if the court sees fit to sort of reopen the overbreath issue, even though it was decided in our favor by the BIA, then remand would be necessary to go into those factual issues, which, again, makes Vermin D distinguishable. So let me ask you this question. Do you obtain cancellation of removal even if we agree with you on the aggravated felony issue? Our client would need to then apply for a cancellation of removal. He conceded removability because of a separate conviction. So, yes. With marijuana? Yes. Okay. Exactly. Exactly. Okay. And so just turning back to the divisibility issue, we talked briefly about the, and I'm sorry, if the court permits me, I'm actually out of time. Well, I have questions. Okay. You're the presider. I am. Aren't I? So this is probably theoretical. Can a jury in New Jersey convict under A1, B1 without agreeing on the identification of the drug possessed? Yes. Yes. And Gibson is an example of that, where the appellate court affirmed a conviction where it just said cocaine and or heroin. What year was that case? I can't tell you exactly. 1999. So that's pre-appendix. It is, Your Honor. Although we have some later cases. So Corona is one from just last year that involved heroin slash fentanyl. And Judson is another case from recently that involved heroin and fentanyl. And, you know, Judge Chung, I may not have addressed your question about these state cases being prior to Apprendi and Mathis. I think that, you know, they still relate to the same definition of an element, and it's the definition that Mathis cited. New Jersey uses the model penal code definition, and that's cited in Black's Law Dictionary under element, which is also cited in Mathis. And, again, Torres did adhere to what would later become the requirements of Apprendi, even though it was decided before. It wasn't allowing judges to impose different penalties based on facts that weren't found by the jury. In fact, it was requiring the jury to find the facts that would lead to a higher grade beyond a reasonable doubt. I just have one sort of basic question. Do we have if we can't grant the ultimate relief you seek, right, which is cancellation, there's no jurisdictional impediment to us continuing on this path and determining the issues at hand? So just to clarify, Your Honor, we're not asking the court to grant cancellation just to determine that he's statutorily eligible, which is a legal question that this court has jurisdiction over, and then it would be remand to an IJ to make that discretionary determination. And probably there wouldn't be a further petition for review because no jurisdiction over that discretionary determination. I have one last question, which is under B6. Are the substances or, yeah, B6, are the substances elements or means? Could you remind me which B6 involves? LSD and PCP. So it's a first degree crime if you possess LSD in a quantity over 100 milligrams or PCP in a quantity over 10 grams. I think still it would be the element is a controlled substance within B6 and then a, well, that is actually a little bit more of a complicated question because of the different quantities, and I honestly don't know the state case law on B6 specifically. But I think still that there's a controlled dangerous substance element and there's a quantity element and each need to be met. So the broader statute, 2C35.5, has controlled dangerous substance element and a quantity element. Perhaps that subsection is then divisible into two separate offenses, but overall each subsection just needs to meet the relevant substance and then the relevant quantity. And I think the quantity is helpful because if it were divisible, if it were further divisible, then that would make, in the B1 example, is 7 ounces a different crime from 8 ounces and a different crime from 9 ounces? You know, Dick Hump and Mathis talk about separate crimes. So if we're breaking down the substance identity further within each subsection, then that leaves open the question, does the quantity have to be broken down further? And I think that the answer is obviously not. So again, the jury needs to find a qualifying quantity beyond a reasonable doubt, but within the potential range of qualifying quantities, be it 7 ounces, 10 ounces, 50 ounces, doesn't need to make a further finding unanimously beyond a reasonable doubt. So if I have a package of 120 milligrams of a psychedelic and half the jury says it's LSD and half the jury says it's PCP, is that a 10-year or is that a 20-year crime? It would have to be the lower sentence if the jury doesn't agree beyond a reasonable doubt. So then the substance is an element in B6. Again, I'm not as familiar with the B6 case law, so I'm not 100% sure. You have to apply your definition of means and elements to that. I don't think that it has to be an element, no. It just would mean that the jury then hadn't proven the higher-grade crime because the prosecution had then proven a substance that would qualify for either piece but hadn't proven the amount that would qualify for either piece. So that would be just a lack of sufficiency of the evidence issue. But I guess as you think about B2 through B6, different drugs, different penalties, how should that affect our thinking on, I guess it's getting to Judge Chung's point, how should that sort of setup affect our thinking on means versus elements generally? Right. So I think that it means that the prosecution needs to prove the applicability of the particular substance, and those are elements, but it doesn't need to prove greater detail about either the identity of the substance or the quantity of the substance beyond a reasonable doubt. And that's what Torres and Edwards held because under New Jersey law, if the mens rea is spelled out in the statute, which it is here, it says knowingly, then that applies to each element of the offense. So if knowingly is a mens rea, what a controlled substance is, is an objective finding of fact separate from a mens rea. Right. I have another question for you going back to my question about theories of liability versus means. To me, you are talking about theories of liability, or the way you've talked about weights and substances in these hypotheticals. So for instance, if you had a federal assault on an officer, assault on a federal officer, it's a three-year crime if I assault a federal officer. It's a 10-year crime if I inflict bodily injury or if it's with a dangerous weapon. Now, that can be charged in one count, and I can say, you know, did assault a federal officer and cause bodily injury with a dangerous weapon. Those are two theories of liability. A jury would have to find, could find one or both, but they would have to, whichever one they picked, they would have to be unanimous. Now, if the assault were with a gun and a knife, that's where means come in. A jury would not have to be unanimous as to whether it's a gun or a knife. If you're saying that they have to find both quantity and weight, how is that not a theory of liability versus a means? I think, so a theory of liability may be the same as a means in the context that you're describing, right? So, well, I'm sorry. In the assault on a federal officer, to the degree that any of, right, so the bodily injury has to be present and the assault on a federal officer has to be present, and then the deadly weapon increases the grade. There are two different theories of liability. Both of which can be charged in one crime, in one count of an indictment, and the government would have to prove one or the other or both unanimously. The means come in, whether it's a gun or a knife, is my dangerous weapon. That would not have to be unanimous. Right. So I think if they're two separate crimes, at least under New Jersey law. Okay, go ahead. Keep going. It would be impermissibly duplicitous to charge them both in the same count under New Jersey law. But the case you're relying on had two different subsections. In this case, heroin and cocaine are both in B1. Correct. And bodily injury and danger, you know, an example, are in the same subsection. Right. Right. So I think that supports our point. It's one crime, and perhaps there are two theories. It could be. But why is that dispositive? I mean, there are plenty of crimes where you have different theories of liability. For instance, the federal drug statute has different theories of liability in the same subsection. I mean, why is that dispositive? Isn't it? I don't think the proof. I think that's right. I think that if there's two separate theories of liability, and both or either would be acceptable to convict, and they're both charged in a single count, then those are means. And that's the Gibson case. If they are separate crimes with fully separate sets of elements under Mathis and Descamp, then that would be inappropriately multiplicitous under New Jersey law, and they should be charged in separate counts. But, I mean, as a legal matter, theories of liability are different from means, and you seem to be conflating those two concepts. That may be, Your Honor. And if that's the case, I'm sorry. I think, yeah, I'm not sure how to change the answer to my question. At least with regard to New Jersey law and with regard to the substances, our position is that if they're fully separate crimes, then they need to be charged in separate counts, and it's impermissibly multiplicitous to charge them in the same count. Well, we'll get you back on rebuttal.  Thank you. Good afternoon. May it please the Court, my name is Craig Newell, and I'm here on behalf of the Attorney General. Mr. Gail's New Jersey conviction for possession with intent to distribute heroin constitutes a drug trafficking aggravated felony that bars him from obtaining the relief of cancellation or removal. There are two different routes upon which this Court may reach that conclusion, and either one of which is a sufficient basis to deny his petition for review. So the first route is whether there is a categorical match as to the drugs covered by Mr. Gail's statute of conviction. The operative part of his statute of conviction is that B-1, and we're only looking at those limited drugs there which, for shorthand purposes, is cocaine or heroin in its derivatives or equivalents. Now, New Jersey has a statutory scheme whereby it defaults to any changes made to the federal schedule unless an objection is made by a state executive official within 30 days. So let me ask a question that I think relates to this. So I think this is one of the arguments that your adversary says is brand new, that you raise an argument that you failed to raise to the IJ or the BIA that the New Jersey Administrative Code, as opposed to the New Jersey Statutory Schedule, controls for the purposes of overbreadth analysis. Is that right? That is right in the sense that the Board found that it was overbroad because of the Iowa flu plane issue. Why this court can address it is this is a matter of pure statutory interpretation of state law, which is the Board gets no deference to. And there are no need for any further fact-finding. To interpret state law, to interpret what a controlled danger substance is under New Jersey law, you need to look at the statutory scheme which references its regulations. And the regulations incorporate, by reference, the federal schedule. So with respect to here, any change to the federal law, such as when it delisted Iowa flu plane, happened in New Jersey. If you look at all the New Jersey regulations after that time, which was in 2015, they all just incorporate, by reference, the federal schedules. And in their exceptions, they do not list Iowa flu plane. So that meant New Jersey followed the feds with respect to Iowa flu plane. Why isn't this an argument that we should follow our precedent on and just send it back? The BIA hasn't had to address this overall issue. Right. There's two answers to that. With respect to Martinez, the court never addressed this question, whether there is the impact of this New Jersey statutory scheme that defaults to the federal schedules. It just, the parties there, as the parties did below before the Board, just agreed that it was overbroad with respect to this Iowa flu plane issue. But here, this is, Vermindi permits and allows this because this is a de novo legal question that this court can answer. It's just a pure question of statutory interpretation of state law. But are you maybe overreading Vermindi a little bit? Because Vermindi sets forth, I recall, maybe four or so considerations. Yes. And de novo and pure legal question is one of them, but that's not sufficient. And so it strikes me that especially when counsel on the other side says, you know, we're feeling a little surprised here. We would have liked to look at a few of these issues. You know, the government says that there's no factual issues in play, but maybe we'd like to look at a few things. Maybe we'd like to just, you know, confirm for ourselves that no one objected within 30 days. You know, maybe we'd like to confirm a few other items that, you know, just might see where that is. We might want to just look at that a little more. You know, doesn't, you know, Vermindi's an exception to chenery. And so if the exception gets read to just kind of let any de novo challenge get resolved here, that's not exactly chenery. Right. I understand that sentiment. And I can first address the overall, the chenery question, and then more specifically why there's no worries about further factual finding that needs to be done. With respect to chenery, you know, the court can only uphold an agency decision on the ground that it gave. The ground here is that Mr. Gale was convicted of a drug trafficking aggravated felony. We are asking no different than the fact that of just, we're asking for a different path, a different legal analysis to get to that ground. We're not asking it to uphold the board's decision on some separate ground. That's what happened in that Johnson unpublished case that Mr. Gale relies on to argue about the waiver. There, the government on petition for review said, okay, this was an aggravated felony, but it amounts to a particular serious crime under a discretionary analysis, and that it still bars him from withholding of removal. And the court was not going to allow that for two reasons. That's just a separate issue where the agency does have deference and there is fact finding. And secondly, that just has a separate procedural posture in the fact that in that case, DHS is the one who brought the administrative appeal. DHS is the one who then stated the issues that were at hand there, and so it was bound by that. So, and to move on to the second thing about whether there's factual questions, there aren't any. The Metcalf and Nicholas decisions cited in our brief show that in New Jersey, it's automatic. There's no need of notice for when the federal government lists or delists a drug for New Jersey to formally recognize it. The only time New Jersey has to do anything formally is if New Jersey objects, which isn't what happened. And I'll say, though, if the court is uncomfortable with extending or applying verimondi in this instance, the case can be and should be resolved on the divisibility issue. For this New Jersey statute, the drugs, the identity and type of drug, that is an element under what Mathis considers to be elements for some use. This means elements thing is vexing for everyone, I think. But one takeaway I have is, and maybe tell me if this is wrong, but if they are, if the type of substance is different elements, right, then doesn't that mean that they would be different convictions? You can't say, oh, it's a different element, but it's still the same conviction. You'd have to say, I was convicted for a different offense. The possession of one substance is a different offense than the possession of another, right? So you basically are saying that, hey, these are different, these aren't just, these are completely different offenses. So if you win, we have to be comfortable with saying. Yes. And the Jordan New Jersey Intermediate Appellate Court decision does say that. It upheld three separate convictions under this statute for the simultaneous possession with intent to distribute three different drugs. That shows that each particular drug creates its own particular crime. That's the ultimate question that Mathis is getting at. We have these alternatives. Are they creating separate crimes and thus elements? Or are, is it one crime with many different means to do it, such as the example of assault with a deadly weapon, the knife, et cetera, that won't matter? I think that's where both parties are not maybe fully understanding a theory of liability versus a means. In that case or in that situation, it would be one count of a crime, and your conviction would be assault on a federal officer. It wouldn't be assault on a federal officer with bodily injury and a separate crime, assault on a federal officer with a dangerous weapon. It's the same crime, but there are two theories of liability, either or both of which the jury has to be unanimous. What they don't have to be unanimous are the means. Means are a way of proving an element. In this case, in the second theory of liability, dangerous weapon, the means could be a knife or a gun. Some jurors could say knife. Some could say gun. They wouldn't have to be unanimous on that. They would have to be unanimous that a dangerous weapon was used in order to get the 10-year stat, Mathis. If they weren't, you've got the three years. If three say, you know, there was no dangerous weapon used, the government has approved either a knife or a gun, then that's just the three-year assault on a federal officer. And what we have here is whether you use the phrase a theory of liability or elements or unit of prosecution, we have that each particular drug does create a separate crime that results in a separate conviction and thus has a legal consequence, which is not that means that the jury doesn't have to agree upon. The cases that Mr. Gale relies upon to say that it's just a means the jury doesn't have to agree upon don't address that question. The Torres and Gibson, which are the main cases relied upon, do not. With respect to Torres, Torres, yes, it uses the word elements, but it was using it in the context of state law in New Jersey. Any element of the offense has to, the mens rea modifies every element of the offense. So it was addressing the mens rea question. But Torres essentially admits that it is the substance, I'm sorry, the substance and the quantity is an element because it meets the concept of apprendi, that for punishment purposes it has to be approved by the jury. I thought Torres said that the quantity and quality were not elements and did not have to be proven to the jury. They said it in the sense of that question of are they elements of the offense that needs to be, that the mens rea modifies. So in the sense that no, what the jury does not have to prove is that the defendant knew he possessed with intent heroin in particular. He needs to know that he possessed with intent an illicit drug. The question is the objective question. So that's this mens, so there's the actus reus, the possession with intent. There's this mens rea attached to it. And then there's this objective question of what is that drug? What is that particular drug? What is its quantity, its quality, and its nature? That is an element. And Torres, by saying that you need to prove that by, the jury needs to establish that, is following apprendi, which in Mathis says that makes it an element. In doing so, they relied on federal case law that said 841 also doesn't require drug type as a controlled substance, correct? And now after apprendi, controlled substance and quantity are elements. Correct. So long as they subject the defendant to a higher stat max. Correct. And that is, in New Jersey it does, in that unpublished Marsh decision from a different panel of this court a few months ago, the court relied on that differing punishments in finding the drug an element. And just, I noticed my time's running out. I'll mention why the Gibson case doesn't resolve this question either. In Gibson, as in a handful of other cases they, Mr. Gale relies on, is noticing that the charging document, the indictment may say have an and or in it. But none of those address the question of duplicity. None of those say that those indictments are wrong as a matter of law. And also duplicity is, wouldn't be a good way of finding that because in the end it's a prejudicial evaluation. The Jordan case is much stronger and more indicative of that they're elements. And then Gibson, the question wasn't affirming whether it was all right that he had this conviction with the and or. It was a question of merging a possession, a lesser included offense of a possession in the possession with intent to distribute. In that case, the state's theory was that there was a possession of one type of drug and there was a possession with intent to distribute with another type of drug. But because of the fact that the trial judge didn't give jury instruction recognizing that, the court just said under these circumstances we're just, we've got to allow these to merge. And that's a very particular case for a particular setting. And it's very common of appellate review of crimes we're looking to see harmless there and such like that. You can't read as much into that or anything into that compared to, say, Jordan, which is straight on point. You know, it strikes me a little bit that maybe you'll agree with this, maybe you'll disagree with this. But New Jersey law is just, it's going a lot of different directions. We don't have a statement by the New Jersey Supreme Court on this. So that's not a knock on New Jersey law in the least. That just means that you have different courts reaching different conclusions at different times without guidance from the highest court. But if New Jersey law is a little bit uncertain or has a degree of uncertainty associated with it, can we go down the modified categorical approach? Or if it's uncertain, are we stuck with treating these as, you know, just stuck with a normal categorical approach? Right, yeah. First of all, in our opinion, it's not uncertain. But secondly, it's not uncertain. But because, and you don't have to find this uncertainty. Because so this, the Jordan decision, yes, it's an intermediate appellate court decision. But it does say simultaneous possession with intent to distribute different drugs creates different crimes and thus creates different convictions and separate punishments and, you know, separate deprivations of liberty. That is not just, you know, something with no legal effect. But the way to look at that is what this court referenced in a 2016 Singh decision. It says to make these divisibility determinations, it can rely on intermediate state appellate court decisions. It references an older, the way to do this, it references an older Supreme Court decision of West v. AT&T that's like, if a state intermediate appellate court answers a question of state interpretation, the federal court should follow it. Absent some, you know, that there's persuasive data from, that the higher court would rule differently. And there is nothing here to suggest that. Let me just interrupt you because I'm familiar with that principle. I guess what I'm saying, though, is what if we have, you like the Jordan decision, right? Right. From what I glean, your friend on the other side likes the Gibson decision, right? And so are we supposed to pick one of those two decisions? Or are we supposed to say it's too hard to pick one of those decisions? And without picking one of those decisions, and without clarity as to which one to pick, we're just going to apply the normal categorical approach, not the modified categorical approach? When faced with this situation, the court should pick the decision that represents the interpretation of New Jersey state law because that is the de novo legal question for this court to resolve. Jordan is a strong indicator and on point to this question. The 6th, the 8th, the 9th, and the 11th Circuit have all found the principle that if there's intermediate state appellate court decisions out there that say a simultaneous act involving three, multiple drugs, say cocaine in one pocket and heroin in the other, that creates two crimes. And that's the ultimate question that Mathis is asking. Are these alternatives creating separate crimes? Or are they creating one crime with different approaches? Let me just ask you a hypothetical. Let's say that Jordan's out there and says everything that Jordan says. Okay. But let's just say that there's separate New Jersey appellate court decisions that say different things or separate New Jersey trial court decisions that say different things or separate New Jersey administrative codes that say different things. Is the answer, just go Jordan, or does the answer account for those differing sources of authority? I think it depends on what those differing sources are. In this case, those different sources, if anything, make suggestions about whether it's elements or means. Jordan answers the question. And in addition to Jordan, you have the statutory structure of the fact that to figure out which subparagraph you're in for the differing punishments, you need to know what the drug is. And that is the apprendee issue of that creating elements. So under these circumstances, the Jordan decision, this intermediate appellate court decision, is the answer to the question. I could see some other circumstances where it's more wishy-washy, for lack of a legal term. If we disagree with you that New Jersey state law does not plainly answer the question of whether drug identity is an element of the crime or not, how is Gail's situation different from the one presented by, I'm going to butcher the name, Najera Rodriguez from the Seventh Circuit? How's Gail's? Yes. Well, if you totally disagree with us on the categorical question, on the divisibility question.  If that is the case, then this case gets remanded for him to have a hearing on the discretionary question of whether he merits cancellation of removal. And that will involve fact-finding and et cetera and the weighing of equities and adverse factors. Najera, that case involved, I don't remember if it involved, if it was a removability pure question or a cancellation eligibility question. But it did, in that case, the Seventh Circuit found the drugs to not be an element and indivisible. But that was resolved on different reasons. In that case, it did not have the Jordan or K-salt as such. And it also, the Najera decision hangs its hat too much on the differing punishments and the lack of it to find it to be the means. That's a logic, a jump in logic you shouldn't make. Yes, differing punishments create elements. But just when you do not have differing punishments, that doesn't automatically make it a means. There's other ways to determine whether something's an elements or a means. One of them being if that thing in question creates separate crimes. And that's what Jordan says. There are no further questions. I appreciate your time. Thank you, Your Honor. So thank you. We'll hear you on rebuttal. Thank you, Your Honor. I'm hoping to just make four brief points. So first on Jordan, Jordan is not as clear as the government suggests. This is a case about merger and double punishment. And so the court just held that it was permissible to convict for possession of two different substances and to sentence them separately. But that doesn't necessarily say anything about the elements of the offense. That just means that there were different factual bases for each offense. So as my friend said, heroin in one pocket, cocaine in the other, those are two different actions similar to a knife in one pocket, a gun in the other. Or in the Francisco and Shaw cases, there are multiple weapons in the trunk of the same car. That can give rise to multiple counts, not because the possession of a weapon has different elements for a sledgehammer, a knife, a gun, but because there were different acts, even if they occurred pretty much at the same time. So that's all that Jordan is about. And it's especially helpful to read it in context with Strecco, which says multiple counts of simple possession doesn't merge, but possession with intent does merge. Those just aren't cases about elements. They're cases about merger and punishment. So to Judge Phipps's point, at best, the state case law is unclear. And the BIA actually conceded that or found that below and as well as in matter of Laguerre. And where that's the case, Mathis and Taylor have the demand for certainty. So where each of the tools in Mathis don't produce a clear result, the categorical approach and not the modified categorical approach apply. Third, I want to try to better address the theories of liability question. I think in the assault on an officer hypothetical or example, I assume there needs to be a special verdict form so that the jury can indicate which of those theories of liability it's finding unanimously beyond a reasonable doubt. There's no such requirement under New Jersey law, and that's why the New Jersey cases like Jeanneau, Rodriguez. It says that the jury has to be unanimous. They have to be unanimous on B1. So I think in your situation, if we're talking about elements versus means, they're elements, not means. So if I said otherwise, that was my error. But if the jury is finding it unanimously beyond a reasonable doubt, that's an element. But in New Jersey, because there's no special verdict form, it can't be charged within the same count. I mean, I understand where you're going with that, that it could be a special verdict form or it could be a unanimity instruction. I mean, I don't think the presence of a special verdict form is just positive. To really understand what someone found, you'd have to look at both the instructions to the jury as well as a verdict form. When you have a case in which a count is charged with multiple theories of liability, or like if you had a scheme to defraud, that could be one count with multiple different theories of schemes. A jury would only have to find one of those unanimously. They could get a unanimity instruction. They could get a special verdict form. You're not going to know unless you look at that. I think that's right. I think that's right. But the bottom line is there has to be some mechanism for ensuring that the jury verdict is unanimous on anything that's an element. But Torres says they have to be unanimous because it matters for grading, which is what Apprendi says. So in effect, that makes it an element under Apprendi. Right, but I think Torres only says that in as much as it matters for grading. But grading is what Apprendi is about. It's about an increased punishment. Right. So in as much as it matters for grading, it does need to be found beyond a reasonable doubt. But the jury doesn't have to get more specific. And, in fact, so for example, there are lots of different analogs of heroin that are included under B1. So the jury doesn't need to give the chemical formula that it agrees upon. If an expert gets up and testifies this is an analog of heroin, then the jury can convict unanimously on this is a B1 substance. It falls within this broad term within B1. But it doesn't need to necessarily specify exactly which substance was possessed. I mean, what – I'm sorry, Peter. Oh, no, no. Sorry, go ahead. Well, no, if you have more on this line, I had something about another line. I just wonder what do you make of the fact that Torres' characterization cites the 841 case law, the federal 841 case law that says it's not an element. Following Apprendi, the case law is clear that is an element. Right. I mean, the court seemed to expressly rely on that. How do you account for that? If it changed in federal law, and that's what the state court was relying upon, why – and the state court has already said you have to be unanimous for grading purposes. Why is this semantic difference the dispositive factor for you when, in fact, what you're saying is they do have to be unanimous by Apprendi because it matters for grading, a.k.a. an increased stat max. Right. So I agree, and I think that's why Torres remains good law because it is consistent with Apprendi because it does say that there has to be a unanimous verdict in as much as it matters for grading. But then I think the further question is whether they have to be unanimous about a more narrow set of alternatives, which is not between B1, B2, B3, but within B1. And that's where there's no mens rea requirement, and there's no – that's the holding of Torres and Edwards, and there's no unanimity requirement as between the alternative types of substances that all fall within B1. To maybe just ask – you might have said you had four points you wanted to make. By my count, you might be somewhere close to three, but maybe you've already made number four. No, that's okay. But, you know, the question I had goes to this – I'm intrigued by the pegging argument that you say you were surprised by that the government raises, and I understand you saying that. And I guess my question, though, is how strong is – how strong of a waiver argument are you asserting in that respect? Are you saying we can't consider that, or that's like, you know, the soft form? And then the strong form is not only can we not consider that argument, but that can't be considered on remand to the BIA. The only thing the BIA can do is make a discretionary determination on cancellation. That might be the strong form of the argument. There might be another option that you have. But I guess my question is I understand you're making at least the weak form or the soft form, that we can't consider that. But are you going so far as to say that that would then be off limits if we remand? Yes. We're making both arguments in the alternative. So our strong argument is the waiver argument, which is similar to the Johnson, the unpublished case. And that also happened in Lorenzo v. Sessions in the Ninth Circuit, which is another drug case where the government had a new expert and wanted to talk about different things on a petition for rehearing. And the court said, no, that was waived in this case. In the next case, you can bring it up. And then our alternative fallback argument is that, at minimum, the court should remand to permit sort of the full range of overbreadth issues to be addressed by the agency on remand. And I would just note that on the strong argument, the waiver argument, it's appropriate here. This was an explicit waiver. The DHS actually did not raise this specific issue, but challenged overbreadth generally at the IJ level. And then on appeal to the BIA, the DHS left that out of their brief entirely and only briefed divisibility, assuming overbreadth. So that's an intentional waiver. They made a decision to narrow the litigation issues to divisibility and should be held to that, at least in this case. All right. Well, thank you so much. Thank you, Your Honors. Thanks for the spirited arguments. And we'll take the matter under advisement.